## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Luis Fernando Rosales-Navares**

   v.

**FCI Berlin, Warden, et al.**

Case No. 1:26-cv-232-PB-AJ
Opinion No. 2026 DNH 046

## MEMORANDUM AND ORDER

Luis Fernando Rosales-Navares, an alien subject to a reinstated final order of removal, challenges his present detention while he pursues withholding of removal to El Salvador. He argues that he is entitled to immediate release under Zadvydas v. Davis, 533 U.S. 678 (2001), or, alternatively, to a bond hearing based on the length of his detention to date. The government objects to both.

Rosales-Navares is ineligible for relief under Zadvydas. However, I join with other district courts in concluding that the Fifth Amendment requires an individualized custody determination when an alien's civil detention— even when based on a final order of removal pursuant to 8 U.S.C. § 1231— grows substantially prolonged. I therefore grant Rosales-Navares's petition to the extent of affording him that relief.

## I.  BACKGROUND

Although Salvadoran by birth, Rosales-Navares was raised and "spent the overwhelming majority of his life" in Guatemala. Doc. 1 at 4. He first attempted to enter the United States by crossing the Rio Grande in April 2008, when he was twenty years old. See id. at 4-5; Doc. 7-2 at 3. He was promptly apprehended and removed to Guatemala under an expedited order of removal pursuant to 8 U.S.C. § 1225(b)(1). Doc. 7-1 at 2.

Rosales-Navares reentered the United States two years later. Doc. 1 at 5-6. He eventually settled in Clinton, Massachusetts, where he resided with his wife and children for over fifteen years. See id. Throughout that period, Rosales-Navares went undetected by immigration authorities. Doc. 7 at 3.

In January 2025, Rosales-Navares was arrested and notified that his order of removal from 2008 would be reinstated based on his illegal reentry pursuant to 8 U.S.C. § 1231(a)(5). Id.; Doc. 7-5 at 2. After his arrest, Rosales-Navares expressed fear of returning to El Salvador, prompting an interview with U.S. Customs and Immigration Services ("USCIS"). Doc. 7-6 at 2-3. Based on that interview, USCIS concluded that Rosales-Navares had not established a reasonable fear of persecution or torture in El Salvador. Id. at 2. Rosales-Navares sought review of that finding before an immigration judge ("IJ"). Id. at 3; Doc. 7-7 at 2-4. In March 2025, an IJ vacated USCIS's finding and placed Rosales-Navares in withholding-only proceedings. Doc. 7-8 at 2-3.

A different IJ ultimately denied his application for relief in August 2025. Doc. 7-9 at 2-9.

Rosales-Navares appealed the IJ's denial to the Board of Immigration Appeals ("BIA"). See Doc. 1 at 6. Initially, Rosales-Navares's appellate brief was due to the BIA on November 14, 2025. Doc. 7-10 at 2. Around that time, Rosales-Navares filed an overlong brief accompanied by a motion to waive the BIA's thirty-page limit, adhering to the procedure for such requests laid out in the BIA's scheduling order. Doc. 7 at 4; see Doc. 7-10 at 3 ("If a party files a motion to increase the page limit, the motion and the brief need to be filed together."). The BIA denied the motion and extended the briefing deadline for both parties to February 19, 2026. Doc. 7-11 at 2-3; Doc. 7-12 at 2. Rosales-Navares refiled on February 11, 2026, while the government elected not to file a brief. Doc. 1 at 6. His appeal remains pending. Doc. 7 at 4.

Throughout the proceedings since his arrest, Rosales-Navares has remained in federal custody. Doc. 1 at 2. Most recently, he has been incarcerated at Federal Correctional Institution Berlin ("FCI Berlin"), a medium-security prison in northern New Hampshire. See id. On March 27, 2026, Rosales-Navares filed the instant petition for a writ of habeas corpus in this Court, contending that his continued detention contravenes the Supreme Court's decision in Zadvydas as well as the Fifth Amendment's Due Process Clause. See id. at 9-15. He asks this Court to release him under reasonable

conditions of supervision or, in the alternative, order the government to afford him an individualized bond hearing before an IJ. See id. at 17. The government responded to his petition on April 6, opposing both forms of requested relief. See Doc. 7.

I held a status conference on April 7, 2026, at which the parties agreed that Rosales-Navares's petition could be resolved on the papers already submitted. I address their arguments below.

## II.  STANDARD OF REVIEW

When a person is held "in custody in violation of the Constitution or laws or treaties of the United States," habeas corpus relief is appropriate. 28 U.S.C. § 2241(c)(3). The habeas petitioner carries the burden of proving that his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner."). If a petition "present[s] only issues of law," it may be resolved on the merits without a hearing. See 28 U.S.C. § 2243; see also R. Governing Section 2254 Cases 8(a); LR 7.4(c).

## III.  ANALYSIS

Rosales-Navares challenges his detention on two grounds, each of which corresponds to a distinct form of relief. First, he asserts a Zadvydas claim in support of his immediate release. Second, he argues in the alternative that his detention's continuation is constitutionally unreasonable

absent an individualized bond hearing. As I explain below, Rosales-Navares prevails on the latter theory only, warranting a bond hearing.

## A.   Zadvydas Claim

Beginning with his argument for outright release, Rosales-Navares asserts that his detention violates the Immigration and Nationality Act ("INA") as construed by the Supreme Court in Zadvydas. However, his arguments for immediate release under Zadvydas are indistinguishable from those that this Court and the First Circuit held insufficient in G.P. v. Garland. See 2024 DNH 001, 2024 WL 328435, at *4 (D.N.H. Jan. 29, 2024), aff'd, 103 F.4th 898, 901-02 (1st Cir. 2024). His Zadvydas claim is thus foreclosed by binding precedent.

In Zadvydas, the Supreme Court "read an implicit limitation" into the INA which requires that an alien be released after six months if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 689, 701. While at bottom a matter of statutory interpretation, this holding served "to avoid a serious constitutional threat" to aliens' substantive due process rights that would arise from the statute's apparent authorization of indefinite civil detention for aliens ordered removed. See id. at 690-91, 699. To eschew that constitutionally problematic result, the Court interpreted the statute to

permit an alien to obtain release in the rare case where he can show a serious improbability that the government will ever remove him. See id. at 701.

In G.P., the First Circuit further clarified the considerable limits on Zadvydas claims, holding that an alien's detention while he pursues withholding of removal, without more, does not run afoul of Zadvydas. See 103 F.4th at 902-05. There, the alien had waited in immigration detention for nearly four years while his withholding-only proceedings unfolded, which saw his case falter before an IJ and the BIA before being remanded for further consideration by the First Circuit. See id. at 899-901. Despite the prolonged extent of his detention in the meantime, the court held that the alien's circumstance did not meet the Zadvydas standard for improbable removal. See id. at 901-02. The court grounded this conclusion on the inevitable (even if distant) resolution of the alien's withholding-only proceedings, which would eventually result in his release, removal to his country of origin, or removal to a third country—any one of which would avoid the "indefinite and potentially permanent detention" feared in Zadvydas. See id. (quoting Castaneda v. Perry, 95 F.4th 750, 757 (4th Cir. 2024)).

Rosales-Navares's Zadvydas claim is materially identical to the one rejected in G.P. As I explained in that case and recently reiterated, Zadvydas does not require release during the pendency of withholding-only proceedings in the normal course, even when those proceedings drag on. See 2024 WL

6

328435, at \*5; De Leon v. Luna, 2026 DNH 041, 2026 WL 1048396, at \*2-3 (D.N.H. Apr. 17, 2026). Beyond stating that his removal "is not presently possible while [his] BIA appeal remains pending," Rosales-Navares does not explain how his future removal is less certain than in G.P. See Doc. 1 at 14-15. Rather, like in G.P., Rosales-Navares's proceedings will eventually conclude, after which he will either be released, removed to El Salvador, or removed to a third country. See 103 F.4th at 901-02. That case's reasoning thus leads to the same conclusion here, and I cannot order Rosales-Navares's immediate release under Zadvydas.[1]

## B.   Prolonged-Detention Claim

Rosales-Navares additionally brings a second, as-applied constitutional challenge to his detention, arguing that his fifteen-month incarceration without a bond hearing violates his right to procedural due process under the Fifth Amendment. This separate prolonged-detention claim raises an issue not presented in G.P., in which the petitioner did not assert a constitutional basis for relief beyond the underlying constitutional avoidance inherent to a Zadvydas claim. See id. at 902 n.3 (noting that because "G.P. challenges his

---

[1]   Like the petitioner in G.P., Rosales-Navares does not appear to assert a standalone claim that the government has violated his right to substantive due process by failing to immediately release him. See 2024 WL 328435, at \*5. Because he has not made that argument, I will leave resolution of that issue for another day.

detention under only Zadvydas," the court "need[ed] not consider any constitutional claim"); see also 2024 WL 328435, at *5 (same).

Turning to that pure constitutional claim, Rosales-Navares argues that the Fifth Amendment precludes the government from detaining him for as long as it has without an individualized custody determination. Significantly, he does not contest the government's authority to initially detain him without a bond hearing, as he acknowledges that his inadmissibility under § 1182 renders him initially detainable under § 1231(a)(6). See 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 . . . may be detained beyond the removal period . . . ."); id. § 1182(a)(9)(C)(i) ("Any alien who . . . has been ordered removed . . . and who enters or attempts to reenter the United States without being admitted is inadmissible."); see also Johnson v. Guzman Chavez, 594 U.S. 523, 535 (2021) (holding that "aliens subject to reinstated orders of removal" are properly detained under § 1231). Rather, Rosales-Navares contends that while his detention was without a doubt lawful at its outset, it has since grown constitutionally unreasonable because of its prolonged duration without individualized review.

Presently, no binding authority from either the First Circuit or the Supreme Court directly addresses pure constitutional claims of prolonged detention brought by alien detainees. The First Circuit previously set forth a non-exhaustive list of factors for courts to use in assessing the constitutional

8

reasonableness of aliens' categorical detention under 8 U.S.C. § 1226(c) in

Reid v. Donelan, but it later withdrew its opinion in light of the Supreme

Court's decision in Jennings v. Rodriguez, 583 U.S. 281 (2018), see 819 F.3d

486, 500 (1st Cir. 2016), withdrawn, 2018 WL 4000993, at *1 (1st Cir.

May 11, 2018), and indicated that it is "in no way bound" by it, G.P., 103

F.4th at 904. And in Jennings, the Supreme Court expressly declined to

address the question. See 583 U.S. at 312.

Confronted with this vacuum of binding authority, I turn to other

circuits that have considered aliens' constitutional claims of prolonged

detention since Jennings—the Second and Third Circuits, specifically. The

Second Circuit, for its part, examines these claims through the conventional

interest-balancing framework for procedural due process claims established

by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976). See

Black v. Decker, 103 F.4th 133, 147-48 (2d Cir. 2024). The Third Circuit,

meanwhile, uses a multi-factor reasonableness test much like the First

Circuit's discarded approach in Reid. See German Santos v. Warden Pike

Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020). Rosales-Navares

advocates that I adopt the latter view, and indeed, all my colleagues on this

Court to have considered prolonged-detention claims have done exactly that.

See Fils-Aime v. FCI Berlin, Warden, 2025 DNH 126, 808 F. Supp. 3d 218,

224-26 (D.N.H. 2025); K-S- v. Warden, FCI-Berlin, 2025 DNH 145, 2025 WL

3671774, at \*4-5 (D.N.H. Dec. 17, 2025); Beneche v. FCI Berlin Warden, 2026 DNH 038, 2026 WL 1031050, at \*3-5 (D.N.H. Apr. 16, 2026); see also Rocha v. Barr, 422 F. Supp. 3d 472, 480-82 (D.N.H. 2019) (conducting a similar inquiry under Reid).

The government nonetheless objects, arguing instead that for § 1231 detainees like Rosales-Navares, Zadvydas supplies the only recourse against infinite detention. As I noted above, however, Zadvydas was a statutory construction case asserting a claim for immediate release; it did not foreclose aliens from challenging their detention on alternative, as-applied constitutional grounds. See G.P., 2024 WL 328435, at \*5. Indeed, contrary to the government's representation, the application of multi-factor reasonableness tests like the Third Circuit's above to § 1231 detainees is increasingly common, not only among my colleagues, but also courts in circuits that have yet to expressly require the practice. See, e.g., Arostegui-Maldonado v. Baltazar, 794 F. Supp. 3d 926, 938-42 (D. Colo. 2025).

The government is similarly mistaken to rely on Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022). In Arteaga-Martinez, the Supreme Court undertook a textual analysis of § 1231(a)(6), determining that the provision does not require bond hearings for aliens like Rosales-Navares who have been detained for over six months. See id. at 580-82. But the Court was careful to make clear that its decision did not address whether aliens in the same

position have a separate constitutional right to bond hearings. See id. at 583 ("The courts below did not reach Arteaga-Martinez's constitutional claims because they agreed with him that the statute required a bond hearing. We leave them for the lower courts to consider in the first instance."); see also Arostegui-Maldonado, 794 F. Supp. 3d at 938 (observing the same limitation in Arteaga-Martinez). Much like in Zadvydas, the Court thereby cabined its holding to statutory construction, leaving open the door to aliens with pure constitutional challenges.

Apart from citing Zadvydas and Arteaga-Martinez, the government does not explain why Rosales-Navares lacks the same right against unreasonably prolonged detention recognized by my colleagues in Fils-Aime, K-S-, and Beneche. Persuaded instead that my colleagues' view is correct, I join their consensus and proceed to examine Rosales-Navares's prolonged-detention claim under the same multi-factor rubric.

As articulated by the Third Circuit, that rubric requires courts to consider four factors in assessing the reasonableness of an alien's detention: (1) the "duration of detention," (2) "whether the detention is likely to continue," (3) "the reasons for the delay," and (4) "whether the alien's conditions of confinement are 'meaningfully different[]' from criminal punishment." German Santos, 965 F.3d at 211 (alteration in original) (quoting Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d

11

Cir. 2015)). Like the First Circuit's list of considerations in <u>Reid</u>, this list is an open set, and courts should consider its factors "along with all the other circumstances" of an alien's detention. <u>See</u> <u>id.</u> Nonetheless, Rosales-Navares raises only the four above in his petition. I assess each in turn.

### 1.   <u>Length of Detention</u>

"Though no bright-line rule dictates when detention has become unreasonably prolonged, 'detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics.'" <u>Fils-Aime</u>, 808 F. Supp. 3d at 225 (quoting <u>Smorodska v. Strafford Cnty. Dep't of Corr.</u>, No. 20-cv-446, slip. op. at 3 (D.N.H. May 14, 2020)).

Here, Rosales-Navares has remained in custody for over fifteen months, surpassing the one-year mark and aligning with the range of lengths that my colleagues have held unreasonable. <u>See</u> <u>id.</u> (fourteen months); <u>K-S-</u>, 2025 WL 3671774, at *4 (sixteen months); <u>Beneche</u>, 2026 WL 1031050, at *4 (thirteen months). While the government attributes the length of Rosales-Navares's detention to his own pursuit of relief from removal, it does not otherwise contend that he tactically maneuvered to delay resolution of those proceedings. I therefore conclude that the length of Rosales-Navares's detention weighs in his favor.

    2.    <u>Likely Duration of Future Detention</u>

In <u>Beneche</u>, my colleague noted that an alien's detention can "extend for years" after filing an appeal with the BIA, as the BIA's eventual decision is usually followed either by further proceedings before the IJ or an appeal to the First Circuit. <u>See</u> 2026 WL 1031050, at \*4. Especially in the latter case, the First Circuit is additionally prone to stay an alien's removal while such an appeal is pending, all but ensuring that he remains in custody while his case is briefed and decided. <u>See</u> <u>De Leon</u>, 2026 WL 1048396, at \*1.

To its credit, the government represents that it expects the BIA to resolve Rosales-Navares's appeal in due course. However, the government does not suggest that it would move to release Rosales-Navares should proceedings continue to unfold after that decision, whether before the IJ or the First Circuit. With many months (if not years) of further detention in the offing, the likely extent of Rosales-Navares's future incarceration thus weighs in his favor.

    3.    <u>Reasons for Delay</u>

Where an alien's own actions have delayed the resolution of his immigration claims, his role in prolonging those proceedings can sometimes weigh against finding the concomitant extension of his detention unreasonable. <u>See</u> <u>German Santos</u>, 965 F.3d at 212 (suggesting that delay caused by a failure to pay a filing fee or a request for a continuance may

disfavor relief). However, an alien's exercise of his rights to contest removal through "bona fide immigration proceedings," even if "initiated by the alien," cannot serve as a basis for continued detention. See Fils-Aime, 808 F. Supp. 3d at 226 (quoting Smorodska, No. 20-cv-446, slip. op. at 4). Indeed, if it did, we "would effectively punish an alien for pursuing applicable legal remedies." German Santos, 965 F.3d at 211 (citation modified).

In the government's view, Rosales-Navares bears responsibility for perpetuating his own detention by filing an overlong brief to the BIA, which triggered a three-month postponement of the filing deadlines in his case. While undisputed that his overlong brief triggered the delay, Rosales-Navares notes that his filing was nonetheless timely and that he sought to comply with the BIA's scheduling order by filing the overlong brief, consistent with the scheduling order's instructions. See Doc. 7-10 at 3 ("If a party files a motion to increase the page limit, the motion and the brief need to be filed together.").

True enough, the BIA's scheduling order does not seemingly present a more expedient procedure by which an alien may obtain permission to file an overlong brief. See id. Still, a complete reading of the order's instructions makes clear that Rosales-Navares was on notice of the risk of further delay he bore by filing an overlong brief, as the BIA also emphasizes its disinclination to grant such exceptions. See id. ("Motions to accept briefs that

14

exceed the page limitation . . . are disfavored, and will not be granted absent a showing of extraordinary and compelling circumstances."). Rosales-Navares's decision to file such a brief despite that risk thus seems more akin to seeking a continuance—a departure from the ordinary (fastest) course of review which, while permissible, is entirely optional. See German Santos, 965 F.3d at 212; cf. Demore v. Kim, 538 U.S. 510, 530-31 & n.15 (2003) (attributing extended duration of detention to alien's own decision to "request[] a continuance of his removal hearing"). If the lion's share of Rosales-Navares's time in detention were attributable to that delay, then, it would likely work against him.

The government's argument mistakenly narrows the temporal frame, however. Recall that, to date, Rosales-Navares has been incarcerated for a full fifteen months. Even attributing the filing-triggered delay to him, that setback only explains three months—a fifth—of the fifteen he has been in custody so far. As discussed above, that time will only grow and the fraction attributable to Rosales-Navares only diminish while he awaits a decision from the BIA. And where an alien's self-inflicted delay only accounts for only a small subset of his detention, the government's responsibility for the rest may still cut in his favor. See Leslie v. Att'y Gen., 678 F.3d 265, 271 (3d Cir. 2012), abrogated on other grounds by Jennings, 583 U.S. at 305 (concluding

15

that government's delay was unreasonable where alien was responsible for five weeks out of a four-year delay).

Here, Rosales-Navares's procedural moves are responsible for a sizeable share of his time in detention, but by no means most of it. On balance, I conclude that the reasons for his delay weigh in neither his nor the government's favor.

### 4.    Conditions of Confinement

An alien's detention "under conditions indistinguishable from those meant for criminal punishment" weighs in his favor. K-S-, 2025 WL 3671774, at *5. Penal facilities are the archetypal example of such conditions. See id.

As in every one of my colleagues' cases, Rosales-Navares has spent most of his detention at FCI Berlin alongside convicted criminals. See Fils-Aime, 808 F. Supp. 3d at 226; K-S-, 2025 WL 3671774, at *5; Beneche, 2026 WL 1031050, at *5. I agree with my colleagues that such conditions of confinement evince his detention's unreasonableness.

* * *

Weighing the three factors in favor of Rosales-Navares against his partial responsibility for delaying his withholding proceedings, I conclude that his prolonged detention without a bond hearing has become constitutionally unreasonable. And as the appropriate remedy for a prolonged detention "is a bond hearing before an immigration judge," I grant Rosales-

16

Navares's requested relief in that respect. Rivera-Medrano v. Wolf, 2020 DNH 055, 2020 WL 1695628, at *5 (D.N.H. Apr. 6, 2020). The government is to provide Rosales-Navares with a bond hearing consistent with the allocations and burdens of proof required by the First Circuit as soon as practicable. See Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

## IV.  CONCLUSION

Because his detention without a bond hearing has developed into a violation of his procedural due process rights, I grant Rosales-Navares's petition in part. See Doc. 1. The government is ordered to afford Rosales-Navares with a bond hearing before an IJ as soon as practicable.

The parties shall file a status report within fourteen days.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

April 27, 2026

cc:    Counsel of Record